UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>KAABA MAJEED,<br>YUNUS RASSOUL,<br>　a.k.a. YUNUS RASSOULL,<br>JAMES STATON,<br>　a.k.a. ADAM WINTHROP,<br>RANDOLPH RODNEY HADLEY,<br>DANIEL AUBREY JENKINS,<br>DANA PEACH,<br>　　　　　　Defendants. | Case No. 21-20060-JAR |

### GOVERNMENT'S PRE-HEARING MEMORANDUM AND PROFFER PURSUANT TO RULE 801(D)(2)(E)

The United States submits the following memorandum and proffer supporting the admission of coconspirator statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. The government will provide summary testimony at the pre-trial *James* hearing, which will establish by a preponderance of the evidence that (1) the charged conspiracy existed; (2) each defendant was a member of the conspiracy; and (3) certain statements of coconspirators were made during the course of and in furtherance of the conspiracy.

**I.    LEGAL STANDARD**

Statements of a coconspirator in illegal activity have unique evidentiary value, rarely capable of duplication in live testimony at trial. *United States v. Inadi*, 475 U.S. 387, 395-96 (1986). Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that an out of court "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Regardless of a statement's

1

independent reliability or the declarant's availability, coconspirator statements are not hearsay and are admissible if the United States establishes, by a preponderance of evidence, that: (1) a conspiracy existed; (2) the defendants and the declarants were members of that particular conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990). The district court may satisfy the prerequisite for admission of coconspirator statements by holding a *James* hearing or by provisionally admitting the statements with the caveat that the government prove the existence of the conspiracy through trial testimony or other evidence. *Owens*, 70 F.3d at 1123.

The Court may consider the hearsay statements sought to be admitted, as well as independent evidence when making the requisite findings. *Bourjaily* 483 U.S. at 179 (1987); *Johnson*, 911 F.2d at 1403. The court has the discretion to consider any hearsay evidence not subject to privilege, regardless of whether that evidence would be admissible at trial. *Owens*, 70 F.3d at 1124. The government may, in the court's discretion, call only the case agent to testify to the existence of the conspiracy pursuant to Federal Rule of Evidence 104(a). *Id.* Further, there is no requirement that the witness to the hearsay statements be a member of the conspiracy. *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995).

### A. Principles for Determining the Existence of and Membership In the Criminal Conspiracy

Although the conspiracy must be proved by a preponderance of the evidence in order for the coconspirator hearsay exception to be available, it need not be proved by direct evidence. "The nature of the offense of conspiracy with its attendant aspects of secrecy, often requires that elements of the crime be established by circumstantial evidence." *United States v. Andrews*, 585

F.2d 961, 964 (10th Cir. 1978); *see also United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986) (citations omitted) (existence of a conspiracy may be inferred from circumstantial evidence).

Independent evidence of the conspiracy is required. *See Bourjaily*, 483 U.S. at 177. The Tenth Circuit has held *Bourjaily* requires that at most, there "be some independent evidence linking the defendant to the conspiracy." *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987). Independent evidence need not be substantial to be found sufficient. *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993). A coconspirator's direct observations and contact with a defendant qualify as independent evidence of a conspiracy. *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987). Summary testimony by a case agent regarding factual statements by a coconspirator to the agent during an investigation may be considered as independent evidence of a conspiracy. *Owens*, 70 F.3d at 1125. The trial court's requisite findings allowing admission of coconspirator statements are reviewed under the clearly erroneous standard. *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir. 1989).

### B. Requirements for Membership in a Conspiracy

The United States need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. As the Supreme Court has said:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense . . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other . . . If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (citations omitted).

A defendant may be found to have participated in a conspiracy even if he joined or terminated his relationship with others at a different time than another defendant or coconspirator. *Andrews*, 585 F.2d at 964. "[S]tatements made during the course of and in furtherance of a

conspiracy, even in its embryonic stages, are admissible against those who arrive late to join a going concern." *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987) (citations omitted).

A district court may consider the conduct, knowledge, and statements of the defendant and others in establishing participation in a conspiracy. *United States v. Gutierrez*, 576 F.2d 269, 273-74 (10th Cir. 1978) (defendant's presence during part of conversation concerning transaction that was part of conspiracy coupled with completion of the transaction unquestionably identified the defendant as a member of the conspiracy for purposes of admission of coconspirator statements).

Finally, once a conspiracy is established, "there need only be some independent evidence linking the defendant to the conspiracy." *Martinez*, 825 F.2d at 1453. The law is clear that a defendant need not know all the details or all the members of a conspiracy. *United States v. Caro*, 965 F.2d 1548, 1556 (10th Cir. 1992). Further, a defendant's participation in the conspiracy may be slight and may be inferred from the defendant's actions so long as the evidence establishes a connection to the conspiracy. *Id.*; *see United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988).

### C. Statements Made During the Course of and in Furtherance of the Conspiracy

Once the existence of the conspiracy and membership in that conspiracy of both the defendant and the declarant is established by a preponderance of the evidence, statements made "during the course" and "in furtherance" of the conspiracy are admissible pursuant to Rule 801(d)(2)(E). As long as the declarant and the person against whom the statement is offered were members of the conspiracy when the statement was made, the statement need not have been made to a person who was ever a member of the conspiracy. *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995).

Statements are "in furtherance" of the conspiracy and therefore admissible under the coconspirator exception if they are intended to promote the conspiratorial objectives. *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (citing *Reyes*); *United States v. Sinclair*, 109 F.3d 1527, 1534 (10th Cir. 1997); *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993). The statements do not have to actually further the conspiracy. It is enough that the statements are intended to promote the conspiratorial objectives. *Reyes*, 798 F.2d at 384. When determining "whether a statement was made in furtherance of a conspiracy, the focus is on the declarant's intent in making the statement." *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993) (citations omitted). Whether a particular statement tends to advance the objectives of the conspiracy is determined by examination of the context in which it is made. *Perez*, 989 F.2d at 1579.

Some widely recognized categories of statements that have been held to be statements "in furtherance" of a conspiracy include statements: (1) to execute or transact the business of the conspiracy; (2) regarding the activities of the conspiracy; (3) to recruit potential coconspirators; (4) to reassure members of a conspiracy's continued existence; (5) identifying other members of a conspiracy and their roles; and (6) to conceal the activities of the conspiracy.

### 1. Statements Made to Execute or Transact the Business of the Conspiracy

Statements made by coconspirators to conduct the business of the conspiracy and to accomplish its goals are "classic examples of statements made to conduct and further" a conspiracy. *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991). Statements in this category found to be "in furtherance" include: statements of future intent that set transactions to the conspiracy in motion and maintain the information flow among coconspirators, *Roberts*, 14 F.3d at 515; statements that prompt the listener to act in a manner that facilitates the carrying out of the

conspiracy, *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987); statements made to prompt further action on the part of conspirators, *Perez*, 989 F.2d at 1578 (citations omitted); and statements made to facilitate meetings, *United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir. 1992).

### 2. Statements Regarding the Conspiracy's Activities

Statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the in-furtherance requirement. *Perez*, 989 F.2d at 1578; *Roberts*, 14 F.3d at 515 (citing *United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir 1988)). Statements explaining events important to the conspiracy to one of its members in order to facilitate the conspiracy are in furtherance of the conspiracy. *Reyes*, 798 F.2d at 384; *Townley*, 472 F.3d at 1273. Statements regarding a coconspirator's failure to fully accomplish the objective of the conspiracy are admissible as updates on the status of the conspiracy and how that status affects the future of the conspiracy. *United States v. Doyle*, 771 F.2d 250, 256 (7th Cir. 1985).

### 3. Statements to Recruit Potential Coconspirators

Statements made to recruit potential members of the conspiracy are made "in furtherance" of the conspiracy. *Perez*, 989 F.2d at 1578; *United States v. Johnson*, 4 F.3d 904, 914 (10th Cir. 1993).

### 4. Statements to Reassure Members of a Conspiracy's Continued Existence

"Statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987) (citation omittted); *Perez*, 989 F.2d at 1578.

### 5. Statements Identifying Other Members of a Conspiracy and Their Roles

Statements made by a coconspirator that identify a fellow conspirator are made in furtherance of the conspiracy. *Townley*, 472 F.3d at 1273; *Williamson*, 53 F.3d at 1520; *Smith*, 833 F.2d at 219.

### 6. Statements to Conceal the Criminal Activities of the Conspiracy

Statements made to conceal the criminal objectives of the conspiracy are made "in furtherance" of the conspiracy where ongoing concealment is one of its purposes. *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988).

## II. EXISTENCE OF FORCED LABOR CONSPIRACY AND MEMBERS

### A. Defendants were members of forced labor conspiracy

The charges in this case arise out of the defendants' participation in an organization led by unindicted coconspirator Royall Jenkins. From at least October 28, 2000, continuing through November 30, 2012, the defendants, acting in various capacities, engaged in a conspiracy in which they procured the unpaid labor of children for the United Nation of Islam (UNOI). The defendants held leadership roles and assisted the founder of UNOI, Royall Jenkins, with managing UNOI. UNOI enticed parents to send their children to Kansas City, Kansas, with promises of education and opportunity, but instead the children were forced to work extended hours without pay and received no legitimate education. The defendants helped enforce UNOI's strict rules—meals were limited, communications with families and non-members were controlled, minor victims were not allowed to seek outside medical attention, and minor victims were required to worked long hours at UNOI businesses, sometimes sixteen-hour days. There were consequences for children who did not comply with the rules, including psychological and physical abuse, withholding food, silence, and extra "duty" (i.e., work). Over at least a decade, the defendants directed and controlled the

whereabouts and unpaid labor of dozens of minor victims, separated them from their families, and subjected them to forced fasting and physical abuse.

The Indictment charges all of the defendants with participating in the forced labor conspiracy and alleges numerous overt acts that were committed in furtherance of the conspiracy. (Doc. 1, ¶¶ 35-63). The government has also detailed specific conduct related to each of the defendants in various pre-trial filings, including its response to the motion for a bill of particulars (Doc. 186), response to motion(s) to dismiss based on statute of limitations (Doc. 185), and, most recently, its motion to admit relevant evidence (Doc. 233).

### B. Relevant coconspirators

The following individuals are among the coconspirators whose statements, at this time, the government expects may be referenced at trial.[1]

- **Royall Jenkins** – Founder and leader of UNOI.

- **Henry X Munoz –** The Principal at the "University" and held titled of National Director of Education. Later, he was on the Board of Directors of UNOI. As Principal, Munoz directed punishments of disobedient students and led teachings repeating Royall Jenkins' tenants.

- **Akiba Majeed –** Defendant Majeed's wife at the time, held title of Sister National Secretary Akiba. As National Secretary, she eventually gained a position on the Board, and all of the Department Heads of the Board reported to her. In this position, all monthly statements and financial reports of the UNOI businesses went through her.

---

[1] This list is not meant to be exhaustive, as the government expects that additional coconspirators will be identified during preparation for trial or at trial. The government respectfully requests the opportunity to identify additional coconspirators if new information comes to light.

- **KareemAllah** – Lamira Jenkins, one of Royall Jenkins' children with Debra White. Around 2008, Royall Jenkins taught that KareemAllah became "The Host" of the Scientists of the Universe, who he said directed his decisions. At one point, many major decisions—like whether someone was allowed back into UNOI, whether someone could have a child, whether someone could court someone romantically—had to go through KareemAllah. Defendant Rassoull said that KareemAllah was speaking as the original Allah. As the host, she did readings on members that were degrading, to include things like "knowing" that Jacelyn Greenwell had defecated in her food when she was a child, a false lie she spread that caused Royall Jenkins to ship Greenwell off to Alaska as punishment. KarremAllah lived with Royall Jenkins in Arizona's "Land of Peace" and had property and horses paid for by UNOI.

- **Nathan Ray** – A member of Royall Jenkins' security team and enforcer of physical punishments. Eventually was on the Board of Directors of UNOI and held title of National Director of Health Master Nathan, where he headed over all of the health care system and healers.

- **Dena Winthrop/Staton** – Wife to defendant James Staton/Adam Winthrop. Held title of Secretary and responded to requests regarding membership and directed "clearings," a process in which officials did readings on an individual and their past life, to root out "demons" and "Satan's helpers," a process many victims describe as degrading and fear inducing.

- **Jason Winthrop/Staton** – son of James Staton, held title of Lieutenant and Bro. Director. Held leadership role in marketing and advertising Food for Life Supreme, UNOI's primary business enterprise. Was on the Board as Bro. Director of Enlightenment Jason, where his

role included spreading Royall Jenkins' principles and directing "clearings" described above.

- **Dr. Marvin McIntosh** – Head of the UNOI Medical Center. Also on the Board of Directors of UNOI as National Director Dr. Marvin. Stitched a victim's facial wound without pain medication, saying the pain would help her heal and told her that he was using cat hair to stitch her up. Put an ace bandage on a victim's broken bone.

- **Aisha Mohammed** – One of Royall Jenkins' first three wives, who held various leadership roles, including Secretary in North Carolina. As Secretary, she ran the financial dealings of UNOI's businesses there. Before the warehouse was established as the Secretarial Department in Kansas City Headquarters, Mohammed kept all of the financial records in Royall Jenkins' home. She played a major role in recruiting other members and securing their property for UNOI. She was also involved in dispatching youth members to new locations to work.

- **Deborah White** – One of Royall Jenkins' first three wives, who held various leadership roles, including Director of Education. She played a major role in recruiting other members, spreading Royall Jenkins' principles, and directing disciplinary actions against youth members. She was also involved in dispatching youth members to new locations to work. White moved to Arizona—the "Land of Peace"—with Royall Jenkins and owned a home financed by UNOI members.

- **Yvette Seeney** – One of Royall Jenkins' first three wives, who held various leadership roles, including the title of Advisor and acting as Secretary of Dayton. She played a major role in recruiting other members, including those who would become Royall Jenkins' wife.

- **Joy Jones** – Royall Jenkins' youngest wife, who held various leadership roles including Principal at University. She played a major role in recruiting other members, spreading Royall's principles, and directing disciplinary actions against youth members. Moved to Arizona with Royall Jenkins and owned a home financed by UNOI members.

- **Etenia Kinard** – One of Royall Jenkins' wives, who held various leadership roles, including National First Lieutenant of the MGT. Kinard oversaw youth members, was responsible for enforcing Royall Jenkins' rules, made disciplinary decisions, and was involved in decisions regarding where to dispatch children for work. Kinard assisted in opening and securing paperwork and employees for two restaurants in New York and New Jersey, created the work schedules for the members who worked at an Atlanta restaurant. She received financial reports from UNOI businesses, where victims worked.

- **Zeena Leeks** – One of Royall Jenkins' wives, who held various leadership roles. Leeks worked with Seeney, Silver, and Peach to organize where the children were dispatched to work. She was in charge of the restaurant finances in Ohio and ran the Secretarial Department in Maryland with Greenwell. Leeks transported D.D. to Dayton when she was dispatched to work there.

- **Jacelyn Greenwell** – One of Royall Jenkins' wives, who held various leadership roles, including Mother of Civilization after Moreen Jenkins left UNOI. In that position, she was responsible for enforcing Royall Jenkins' rules, communicating and/or imposing disciplinary decisions to the victims and other youth, including fasting. Greenwell used verbal and psychological abuse to keep youth members from leaving UNOI and continuing to work in UNOI businesses. Greenwell assisted in opening and securing employees for

11

restaurants in New York, New Jersey, and Georgia. Greenwell participated in discussions and decisions with the defendants about where in the country to move victims for labor.

- **Oswanna Silver** – One of Royall Jenkins' wives, who held various leadership roles. Silver worked with Seeney, Leeks, and Peach to organize where the children were dispatched to work. When someone did not dispose of a dirty diaper, one of the victims was blamed and Silver beat the victim. Silver was verbally abusive and made children do chores multiple times.

- **Dawneena Archie** – One of Royall Jenkins' concubines, who held various leadership roles, including the title of Secretary.

- **Laota Linda Ragland** – One of Royall Jenkins' wives, who held leadership roles. She was involved with registering vehicles and was on financial accounts.

- **Dr. Raymond Satterwhite** – A consultant who helped restructure UNOI, evaluate its dealings, and disseminated national announcements about threats to UNOI members. Satterwhite served on the UNOI board and advised leadership.

- **Fatima Jenkins** – Managed bakeries where victims worked. A victim served as a maid for Jenkins. She had responsibility for finances in North Carolina.

- **Jeri Greenwell** – Defendant Greenwell's sister, Jeri was head bookkeeper of member's homes and assets that were turned over to UNOI. In Atlanta, she worked with defendants Greenwell and Kinard to discipline the youth men and women workers in the UNOI businesses, prior to defendant Majeed taking over the role for the youth men. Jeri Greenwell was in charge of the house in Atlanta and directing the youth who lived there with her to do housework.

- **Michael 7x King** – Drove children and products to and from locations, made the transportation schedule, and ran a restaurant in Dayton.

- **Moreen Jenkins** – Head of house and called "Mother." Involved in taking food stamps from UNOI members. Involved in discussions about discipline and was involved with "fight club."

- **Myesha Jenkins** – One of defendant Majeed's wives and a lieutenant. Counseled youth on marriage, told a victim that her calls were monitored and was involved in discipline, including fasts.

- **Larry Cephus or Larry X** – Held title of Secretary and had a role with UNOI finances. Cephus was involved with running "math" class with defendant Jenkins.

- **Erica Bennerman** – Held title of Secretary and distributed UNOI announcements. Responsible for UNOI finances. She was in charge of the cake department in Kansas at one point.

- **Leslie Brown** – Dayton Secretary and registered agent for Dayton UNOI and Food for Life Supreme, Inc.

- **Ayreena Winthrop** – Approved travel requests.

- **Reginald Gray** – Minister in Maryland.

- **Amiee Woods** – Held the title of Lieutenant and had role supervising females in UNOI. She was also involved in business dealings.

### III. POTENTIAL COCONSPIRATOR STATEMENTS ADMISSIBLE UNDER RULE 801(D)(2)(E)

#### A. Categories of statements anticipated from witness testimony

Much of the testimony in this case will come from victims and others who will provide historical details regarding the charged crimes. Below is a non-exhaustive list of ten categories of

13

statements the government anticipates could come up during trial.[2] The government respectfully submits the Court can, after the *James* hearing, rule that any statement by a coconspirator that falls within these categories will be admissible.

The following seven categories of statements were all, at a minimum, "statements made to execute or transact the business of the conspiracy." *See Reyes*, 798 F.2d at 384. Specifically, the statements contribute to the climate of fear that UNOI established in order to compel labor, or they are specific to the businesses where the labor was obtained:

1. **Psychological manipulation or verbal abuse** – For example, statements regarding weight, that children were "evil" or had the "devil in them," that Royall Jenkins or UNOI "owned them," and other similar verbal abuse to gain compliance.

2. **Subordinating or Exerting Control –** For example, demeaning statements in group settings to gain compliance, monitoring communications, reprimands for not meeting work quotas or expectations, statements regarding whether to allow children to engage in certain tasks, and statements regarding the approval of discipline. Additionally, statements about who would be forced to or allowed to marry whom, grooming children to be wives or concubines, and how those married off were supposed to act and treat the dominant member(s) of the household.

3. **Threat of Consequences –** For example, statements regarding bad things that would happen to someone who did not comply or who left UNOI, such as physical harm, death, and burning in hellfire. Threats of ex-communication, isolation, and depriving individuals of personal identification documents to exert and maintain control.

---

[2] Many statements are likely to overlap and could fairly be characterized as falling into several categories.

4. **Isolation** – For example, statements related to efforts to isolate children from those close to them to maintain control over them.

5. **Statements regarding punishment** – For example, statements regarding paddling, fasting, and isolation of the children.

6. **Statements regarding children's work assignments** – For example, where children would be "dispatched" to work.

7. **Execute or transact business of conspiracy** – For example, statements from Royall Jenkins or among coconspirators regarding leadership roles and delegation of authority, strategy, UNOI finances, requests for money, and how to maximize UNOI's profit.

The following statements all, at a minimum, relate to the recruitment of potential members to UNOI or retention of current members and are therefore made "in furtherance" of the conspiracy. *See Perez*, 989 F.2d at 1578; *Johnson*, 4 F.3d at 914.

8. **Recruitment, False Promises, and Lulling Statements –** For example, telling parents or children positive aspects of living in Kansas City or the prospect of trips to induce them to move to Kansas City or to ease concerns when they were expressed. Statements to parents attempting to get them to turn the children over to work. Telling parents or prospective members that their children would receive a proper education, help build a nation, live in a safer environment, and be closer to God.

The government anticipates that some statements that could be referenced were made to keep coconspirators abreast of the ongoing conspiracy's activities. *See Perez*, 989 F.2d at 1578.

9. **Keeping coconspirators abreast of activities** – For example, discussions regarding agendas, meetings, or dissemination of information.

Finally, the government anticipates that some statements could be referenced that concern the concealment of criminal objectives of the conspiracy and therefore are in furtherance of it. *See Wolf*, 839 F.2d at 1393.

10. **Concealment** – For example, statements encouraging children to say that they are fine if their parents inquire how they are doing, to lie about their age while at work, or to indicate during support raisers (i.e., fundraisers) that they were in school and that donations from members of the public would go to the school.

### B. Emails Admissible Under 801(d)(2)

At this time, the government has identified the following emails that it intends to introduce at trial as statements which are made by a coconspirator and that fall in one or more of the ten categories above, and therefore are admissible pursuant to Rule 801(d)(2)(E): GX 401, 404 to 407, 412 to 413, 415 to 433, 444 to 448, 451 to 468, 470 to 472, 474 to 479, 481 to 485, 487, 489 to 499, 400-1 to 400-7, 400-9 to 400-10, 400-12 to 400-13, 400-15 to 400-17, 400-21 to 400-27, 400-29, 400-31, 400-33, 400-35 to 400-36, 400-38 to 400-48, 400-50 to 400-59, 400-61 to 400-70, 400-72 to 400-75, 400-77 to 400-82, 400-84 to 400-85, 400-87 to 400-91, 400-93 to 400-99, 400-102, 400-104 to 400-135, 400-137 to 400-184, 500 to 505, 507 to 532, 534, 536 to 547, 548 to 569, 571 to 574 to 587, 590 to 599, 500-1, and 500-4 to 500-7. The government will provide courtesy copies of these exhibits to the Court and counsel for the defendants.

### IV. ALTERNATIVE BASES FOR ADMISSIBLITY OF STATEMENTS

The statements of coconspirators set forth in this proffer should be admitted as nonhearsay under Rule 801(d)(2)(E). Additionally, however, many of these statements are admissible on alternative grounds including: the defendants' own statements admissible pursuant to Rule

801(d)(2)(A);³ statements not offered for the truth of the matter asserted; statements that constitute verbal action, such as the planning, directing, or agreement of the conspiracy, *see United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (noting statement "directing the conduct of a fellow conspirator or agreeing to follow directions" not offered for truth); statements not offered for their truth, but rather to put otherwise admissible statements in context. Accordingly, statements by coconspirators may be admitted against the defendants in many instances without establishing the factual predicate required by Rule 801(d)(2)(E).

## V.     CONCLUSION

The information in this proffer and that will be provided at the *James* hearing will establish, by a preponderance, that the conspiracy alleged in Count 1 of the Indictment existed, that each defendant was a member of it, and that certain statements were made in furtherance of the conspiracy.

Respectfully submitted,

KATE E. BRUBACHER
UNITED STATES ATTORNEY

By: */s/ Ryan J. Huschka*
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Ph. 913-551-6730
Fax 913-551-6754
Ryan.Huschka@usdoj.gov
KS Bar No. 23840

---

³ The governments expects that the vast majority of statements offered against a given defendant as a party opponent will have been in furtherance of the conspiracy and therefore admissible against co-defendants under Rule 801(d)(2)(E).

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

By: */s/ Kate A. Alexander*
Kate A. Alexander
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Ph: (202) 353-3539
Email: Kate.Alexander@usdoj.gov
FL Bar No. 27393

By: */s/ Maryam Zhuravitsky*
Maryam Zhuravitsky
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Email: Maryam.Zhuravitsky@usdoj.gov
MD Bar No. 1312190348


By: */s/ Francisco Zornosa*
Francisco Zornosa
Trial Attorney
USDOJ Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Phone:  202-616-4588
Email:  Francisco.zornosa@usdoj.gov
NY Bar No. 5477245

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2024, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

/s/ Ryan J. Huschka
Ryan J. Huschka
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas